142

In re Popp.

[Cite as In re Popp (1973), 35 Ohio St. 2d 142.]

(No. 73-45—Decided July 11, 1973.)

*Mr. Robin Kennedy*, for appellee, Irene Popp.

*Mr. William J. Brown*, attorney general, *Mr. Thurman E. Anderson*, and *Mr. Jeffrey McClelland*, for appellant, Clifford T. Hickox, Superintendent, Cleveland State Hospital.

WILLIAM B. BROWN, J.   Two fundamental questions are presented in this appeal: (1) Should a petition for a writ of habeas corpus be dismissed because the petitioner has

been released from confinement? If the answer is negative, (2) does an indigent have the right to court-appointed counsel in hearings pursuant to R. C. 5122.15 where he may be confined to a mental institution?

Regarding the issuance of a writ, this court has held that "the purpose of a proceeding in habeas corpus is to inquire into the legality of the present restraint of the prisoner." *Page* v. *Green* (1963), 174 Ohio St. 178. Since the filing of petition for the writ, petitioner has been released from confinement, and there is no restraint. Accordingly, she does not qualify for the writ.

The Court of Appeals below concluded that the case was not moot, stating:

"* * * When the case involves an issue which is of great public importance, *i. e.*, when it concerns the duty and authority of public officials in a situation which is likely to recur, such issue remains vital even when the case becomes moot as to the parties. It might then be said that such a case is not moot, as to the public. Courts have frequently refused to dismiss such cases in order to retain jurisdiction to decide the important public issues involved, and for guidance of the public officials in the performance of their duties."

This court, in *Wallace* v. *University Hospitals of Cleveland* (1961), 171 Ohio St. 487, acknowledged the existence of the "public interest" exception to mootness but decided "* * * in *this* case we should follow the usual procedure of deciding cases only as they exist between the parties thereto and refrain from the giving of an advisory opinion."

The court is taking the same path in this case. Even though the issue of right to counsel in commitment proceedings is of great public interest and touches the lives of many people, the court will not invoke the "public interest" exception to mootness because of the nature of the remedy sought.

The writ of habeas corpus, as Justice Stewart said in *Preiser* v. *Rodriquez* (1973), 41 L. W. 4555, 4558, is a high prerogative writ "available to effect discharge from any

confinement contrary to the Constitution or fundamental law * * *." In concluding a historical development of the writ of habeas corpus, he said:

"* * * in each case his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement."

So the nature of the relief afforded by the writ is to effect a release from *illegal* confinement. In the instant case, there is no confinement, and the issuance or refusal to issue the writ would not affect the petitioner's freedom of movement. There are remedies to attack the collateral issues raised by petitioner, other than this high prerogative writ. Thus, for such purpose, a writ of mandamus or a mandatory injunction would be available as a remedy in a proper case. In light of the fact that the purpose of the writ is to release a person from confinement, the motion to dismiss the petition should have been granted.

Since the first question posed in this case, regarding mootness, was answered affirmatively, there is no need to discuss the merits of the right-to-counsel issue. It should not be interpreted, however, that this court disagrees with the conclusion reached by the Court of Appeals on this issue, that:

"In the light of the foregoing, and because a hearing under R. C. 5122.15 may result in a person's being involuntarily incarcerated, we hold that due process includes the right to be represented by an attorney at the hearing."

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the cause is remanded to that court, with instruction to revoke the writ of habeas corpus heretofore issued.

*Judgment reversed.*

HERBERT, CORRIGAN, STERN and CELEBREZZE, JJ., concur.
O'NEILL, C. J., and P. BROWN, J., dissent.

146

O'NEILL, C. J., dissenting. Although I agree with the majority that the purpose of a writ of habeas corpus is to secure the release of a petitioner from unlawful confinement, I can not agree that in this case, the discharge of the appellee from confinement is a sufficient reason to dismiss the appeal.

I dissent for the reason that the action of the majority today leaves the petitioner without any remedy to expunge from her record the unlawful deprivation of her liberty. The adverse effect that that permanent record will have upon her opportunity for employment and her personal economic and social life is inestimable. Traditionally, in cases similar to this the confined person has been released upon the filing of a petition for a writ of habeas corpus. Until now the courts have permitted such release by the institution to prevent the court from determining the involved constitutional question of overriding public interest. That question may be stated as follows: Is an indigent, involuntarily confined, without the benefit of counsel at a commitment proceeding, denied a constitutional right of due process?

I do not believe that either the desire of the institution, the correctional system or the state to be shielded from unfavorable publicity, or the fear that the courts will be burdened with such cases, is sufficient reason to permit the traditional holding that a writ of habeas corpus can issue only to secure the release of a person from confinement to override the obvious public interest in having this important constitutional question determined, the constitutional right to counsel established, and the record of those unlawfully confined, cleared.

As noted in the majority opinion, this court has recognized that an appellate court may retain an appeal for hearing and determination even though it has become moot, so far as the parties to the particular action are concerned, if it presents a question of public interest. *Wallace* v. *University Hospitals of Cleveland* (1961), 171 Ohio St. 487, 172 N. E. 2d 459.

At the time the petition herein was filed, the appellee was under confinement. Before the hearing on the petition was held, however, the appellee was released from confinement, thus enabling the appellants to raise the issue of mootness. By its decision, this court has approved a procedure whereby it may easily be prevented from reaching the merit issues in commitment cases.

On the merits, I would affirm the decision of the Court of Appeals. The notion that persons may be deprived of liberty and placed in confinement without representation by counsel, especially where those persons are alleged to be mentally unsound, runs against fundamental precepts of due process. The argument that commitment proceedings are civil and for the purpose of rehabilitation fails to adequately meet that proposition.

The Supreme Court of the United States has held that a juvenile is entitled to the assistance of counsel in delinquency proceedings, which are civil, where the result of such proceedings may be commitment to an institution in which the juvenile's freedom is curtailed. *In re Gault* (1967), 387 U. S. 1. Further, a number of lower federal courts have held that the right to counsel in commitment proceedings is a requirement of due process under the Fourteenth Amendment. *E.g. Lessard* v. *Schmidt* (E. D. Wisc. 1972), 349 F. Supp. 1078. The *Lessard* case extensively discusses the need for greater procedural safeguards in involuntary commitment proceedings and is highly persuasive in demonstrating the need for the assistance of counsel in such proceedings.

I would affirm the decision of the Court of Appeals.

P. BROWN, J., concurs in the foregoing dissenting opinion.